STATE *ex rel.* McCANLESS, COM'R, *et al. v.* CINCINNATI SOUTHERN RY. *et al.*

(*Knoxville*, September Term, 1941.)

Opinion filed January 17, 1942.

HENRY M. JOHNSON and LUCIAN L. JOHNSON, both of Louisville, Ky., and JOHN HEISKELL, Assistant Attorney-General, for appellants.

EDWIN F. HUNT, of Nashville, and WHITAKER, HALL, HAYNES & ALLISON, of Chattanooga (JOHN D. ELLIS, City Sol., of Cincinnati, Ohio, of counsel), for appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The State of Tennessee sues to recover of the defendant owners of a line of railroad extending from Cincinnati, Ohio, to Chattanooga, Tennessee, something more than three hundred miles, Excise and Franchise taxes alleged to be due and unpaid under Williams' Code, Sections 1316 et seq., and 1248.143, respectively, for the years 1934 to 1939, inclusive. The railroad is alleged to be beneficially owned by defendant City of Cincinnati, with the title in a Board of Trustees of five, also named as defendants.

Under the provisions of the Code Sections cited, Excise taxes are measured by the net earnings of the corporations and other entities made liable therefor from business done within the State, and Franchise taxes are measured by the value of the properties owned or used in Tennessee.

A motion to dismiss was interposed for the City of Cincinnati, challenging the jurisdiction on the ground that this defendant is a municipality existing under the laws of the State of Ohio and located therein, and is, therefore, subject to suit in that State only.

The Trustees filed a demurrer, coupled with an answer, challenging the claim of liability for these taxes, on the

ground that the bill shows that they, the legal title holders of the railroad, are not doing business in Tennessee and, particularly, that they did no business in this State during the years for which the taxes are claimed in this suit, it appearing from the allegations of the bill, with its amendments and exhibits, that the railroad, and all properties connected therewith, is held and exclusively operated under a long term lease entered into many years ago, immediately upon its construction, by the C., N. O. & T. P. Railway; the defendant Trustees of the City of Cincinnati, being the lessors only, residing in the State of Ohio, where the rents are paid and received and the proceeds disbursed to the beneficial owner, the City of Cincinnati.

The Chancellor overruled the motion to dismiss, being of opinion that the generally recognized limitation upon the rights to sue a municipal corporation beyond the confines of the State of its organization and existence did not apply to a suit against the City acting in its proprietary capacity. For the general rule see *Piercy* v. *Johnson City*, 130 Tenn., 231, 169 S. W., 765, L. R. A. 1915F, 1029; *Nashville* v. *Webb*, 114 Tenn., 432, 85 S. W., 404, 4 Ann. Cas., 1169; 93 A. L. R., 500; 19 R. C. L., 1049; 44 C. J., 1471. However, he sustained the demurrer, holding, first, that no suit could be maintained against the "Cincinnati Southern Railway," named as a defendant, since this was merely a name by which the railroad property was described, and that it was not a corporate entity subject to suit; and, second, that neither the Trustees, nor the City of Cincinnati, were doing business in Tennessee during the years for which the claim was asserted and, therefore, were not liable for the taxes claimed.

The State has appealed from the decree of the Chancellor and the defendant City of Cincinnati complains of

so much of the decree as overruled its motion to dismiss on the grounds heretofore stated. The State assigns as error (1) that the Chancellor erred in not holding the case at bar to be controlled by the decision of this Court in *Memphis Dock & Forwarding Co.* v. *Fort*, 170 Tenn., 109, 92 S. W. (2d), 408; (2) in not holding that the City of Cincinnati, "in its proprietary capacity, in regard to its Cincinnati Southern Railway in Tennessee, is, to all intents and purposes, a domestic corporation of Tennessee, and is thus liable for the Tennessee Excise and Franchise Taxes, for the privilege of exercising corporate powers in Tennessee;" and (3) in not holding that, "If the 'doing of business in Tennessee' by the City of Cincinnati, in its proprietary capacity, is necessary to make it liable for Tennessee's Excise and Franchise Taxes, the learned Chancellor erred in holding, on demurrer, that the City of Cincinnati, in its proprietary capacity, was not doing business in Tennessee, in the light of the State's allegations of specific acts of doing business in Tennessee."

Elaborate and able briefs have been filed and the questions and issues above indicated fully discussed. A brief historical statement is appropriate.

In the year 1869, under legislative authority, the City of Cincinnati undertook the building of a railroad from Cincinnati, Ohio, to Chattanooga, Tennessee. In appropriate court proceedings five trustees were appointed to act for the City of Cincinnati in the carrying out of this enterprise. Bonds were provided for and issued to provide money for the building of the railroad, in the sum of ten million dollars, secured by mortgage upon the Railroad, as constructed, and also guaranteed by the City of Cincinnati.

In 1870 the Tennessee Legislature, Chapter 43, Private Acts, authorized the construction of this railroad into this State by this Board of Trustees, created in Ohio, the Board of Trustees being made subject to suit and to service of process upon its agents in this State. Authority was conferred to lease for operation sections of the Railroad as constructed, and the whole when completed. Work was begun about 1873 and the railroad completed to Chattanooga, the southern terminus, in 1881, at which time a twenty-five year lease was made to the Cincinnati, New Orleans & Texas Pacific Railway, a railroad corporation. This lease passed to the Railway all rolling stock (which was purchased by the Railway) and equipment of every kind and description owned by the Board of Trustees and the exclusive possession and control of the tracks, roadbed and right-of-way, subject to the mortgage securing the outstanding bonds, for a stipulated rental. Subsequent agreements were entered into renewing and extending this lease, so that it now runs to the year 1966. Thus the relationship of the Board of Trustees to this railroad property became and has continued to be that of a lessor only, collecting the stipulated rentals periodically in Cincinnati, Ohio, and there disbursing these funds to the bondholders and the beneficiary, City of Cincinnati. Consistently with this relationship of lessor and lessee, the right of inspection was retained and has been from time to time exercised by the Board of Trustees; and, pursuant to legislative authority, and in conformity to lease agreements, the Board of Trustees has exercised the power of eminent domain in securing changes and additions from time to time to the Railroad right-of-way, Court proceedings, where necessary, having been conducted in the name of the Board of Trustees.

However, we find no showing on the pleadings of the conduct of any such condemnation proceedings during the years for which taxes are claimed in this suit.

Now, summarizing the issues argued before us, these questions appear to be presented:

1. Is the defendant City of Cincinnati, a municipal corporation, subject to suit in the Courts of this State?

2. Is either the defendant Board of Trustees of the Railway, or the City of Cincinnati, a "corporation," or other entity, "organized for profit," within the terms of the Acts invoked in this suit?

3. Does it appear from the pleadings that either the defendant Board of Trustees, or the City of Cincinnati, *was doing business in Tennessee in the years for which the claim for taxes is made?*

The first two of these questions relate rather to procedure and form; the third to the substance and merits of the claim asserted by the State. If the learned Chancellor is right in holding that the defendants were not doing business in Tennessee, thus deciding the third of these issues, then this is determinative, and discussion of the other questions is unnecessary. We consider then first this question. An examination of the statutes invoked by the State is called for.

The Excise tax, Code Sections 1316 et seq., applies to (1) "corporations," etc., "organized under the laws of the State of Tennessee" for profit, and (2) "all such entities organized under the laws of any other State . . . *doing business in Tennessee,*" with the limitation applicable to both classes that the earnings made, taxable shall be "from business done within the State."

The Franchise tax applies to (1) "all corporations, organized under the laws of the State of Tennessee

. . . and (2) "all corporations organized under the laws of any other State . . . *doing business in Tennessee.*" (Business trusts of the Massachusetts type are within the definition of "corporation," by a provision of the Act.) It is expressly provided that, "The tax hereby imposed shall be paid for the privilege of engaging in business in corporate form in the State." In other words, liability for the Franchise tax does not arise, unless business is done in *corporate* form in *this State.*

In *Memphis Dock & Forwarding Co.* v. *Fort, supra* [170 Tenn., 109, 92 S. W. (2d), 409], confidently relied on for the State, dealing with a corporation in the first classification, that is, *organized in this State,* for a specific purpose, domiciled in Memphis, with all its property there, this Court held its earnings, resulting from business "done by the corporation in the exercise of powers conferred by the charter," granted by this State, subject to the Excise tax (liability for the Franchise tax not being involved), the tax being laid "upon the privilege of doing business as a corporation and exercising the corporate powers" granted by Tennessee "for the purpose of producing a profit." It was held that, as to a corporation in this classification, a going concern, organized and domiciled here, "the source of the profit and the character of business carried on in the corporate name is immaterial," whether derived from the rental of the corporate property or not.

In the instant case we are dealing with a situation arising under the second classification, an entity organized, or created, under the laws of another State (whatever the form of its organization may be construed as being), as to which the tax can have no application, unless

the entity was "doing business in Tennessee," in the years sued for, and only, under the Excise tax, as to earnings "from business done within the State."

In the Memphis case, a domestic corporation did its leasing, its collecting and its disbursing in Tennessee, where it had its domicile, all in exercise of powers granted to it by this State. Liability for this tax arose from this exercise of these powers, the tax being measured by the net earnings on the business done in this State.

Here, in the exercise of authority originally granted in Ohio, the Board of Trustees, residents of Ohio, did their leasing, collecting and disbursing *in that State*. We find nothing substantial except "ownership and rental" of property, which we said in the Memphis opinion it might be conceded was "not a taxable privilege." In other words, quite obviously, it was not held in the Memphis case that mere ownership and rental of property in this State, by nonresident title holders, is a taxable privilege. Are we to go further now and so hold?

We are not dealing with a case of a foreign corporation, or like entity, which, owning property in Tennessee, domesticates and locates itself in this State, and, under the protection of our State laws, and enjoying the privileges granted to it by this State, *does the business in Tennessee* of leasing its property, collecting the rentals and making distribution thereof. It may be conceded, though we do not so decide, that to such a situation the principles of the Memphis holding would apply. Here not only was the "organization" of appellees elsewhere effected, its being elsewhere created, but its business of renting, collecting and disbursing is elsewhere conducted. Whatever may be said of the construction of this railroad and its leasing, authorized by our Legislature, this

336

was a power or privilege exercised many years ago, and no privilege has been exercised in Tennessee in the years here involved, other than that of ownership and its common incidents. This we conceded, in effect, in the Memphis case to be a non-taxable privilege.

It is argued that the effect of the Legislative Act of 1870, granting to this Ohio Board of Trustees authority to construct this railroad through Tennessee, with the incidental powers of eminent domain, etc., was a domestication of the Board, with the status and obligations of a domesticated foreign corporation. But if this be granted the limitation, ''doing business in Tennessee'' still applies. We come back to the simple, single determinative question whether or not, when the business of leasing, collecting and disbursing rents from property located in Tennessee, is done in a foreign State, by residents of such State, in exercise of powers conferred within that State, the foreign lessor-owners are subject to this tax.

It is urged that the Trustees did much more in this State in these years 1934-1939, but when the pleadings are analyzed we find but two matters specified, one periodic inspections of the Railroad, and the other the exercise of the eminent domain power in making right-of-way changes and additions. The first of these is but a usual incident of ownership and can hardly be classed as a part of the business of operating the Railroad; and while it is charged that proceedings have been taken in this State at times in the past to exercise eminent domain, pursuant to a provision of the lease, whatever effect this might otherwise have, we do not find any such ''business'' charged to have been done in the years covered by this suit.

After a brief statement of the facts, in substance, as we have outlined, and after overruling the motion of the City to dismiss for want of jurisdiction, the learned Chancellor cited and quoted from *Zonne* v. *Minneapolis Syndicate,* 220 U. S., 187, 31 S. Ct., 361, 55 L. Ed., 428; *McCoach* v. *Minehill & S. H. R. Co.,* 228 U. S., 295, 33 S. Ct., 419, 57 L. Ed., 842; and *United States* v. *Emery, Bird, Thayer Realty Co., et al.,* 237 U. S., 28, 35 S. Ct., 499, 59 L. Ed., 825. Following these decisions he held that the defendants were not doing business in Tennessee, sustained the demurrers and dismissed the suit. We quote from the opinion of the Chancellor his review of these cases:

"In the case of *Zonne* v. *Minneapolis Syndicate,* 220 U. S., 187 [31 S. Ct., 361, 55 L. Ed., 428] there is involved a very similar question to the one in the instant case. In that case the Minneapolis Syndicate owned the west one-half of Block 87 in the City of Minneapolis and for a long time prior thereto had rented stores and offices in the building owned by it and collected the rent therefrom, and the court held that while so engaged it was doing business in the City of Minneapolis. Later on it leased said west one-half of said block to some parties under lease for 130 years, at a rental of $61,000.00 a year, and amended its charter of incorporation to read as follows:

" 'The sole purpose of the corporation shall be to hold the title to the westerly one-half of Block 87 of the town of Minneapolis, now vested in the corporation, subject to a lease thereof for a term of one hundred and thirty years from January 1, 1907, and, for the convenience of its stockholders, to receive, and to distribute among them, from time to time, the rentals that accrue under said lease, and the proceeds of any disposition of the said land.'

"The statute under consideration in that case was an excise tax for carrying on or doing business in a corporate capacity.

"The Court then held that: 'The corporation involved in the present case and owning and renting an office building, was doing business within the meaning of the statute as we have construed it. Upon the record now presented we are of opinion that the Minneapolis Syndicate, after the demise of the property and reorganization of the corporation, was not engaged in doing business within the meaning of the Act. It had already parted with the control and management of the property; its sole authority was to hold the title subject to the lease for 130 years, to receive and distribute the rentals which might accrue under the terms of the lease, or the proceeds of any sale of the land if it should be sold. The corporation had practically gone out of business in connection with the property and had disqualified itself by the terms of reorganization from any activity in respect to it. We are of opinion that the corporation is not doing business in such wise as to make it subject to the tax imposed by the Act of 1909.' (*Zonne* v. *Minneapolis Syndicate*, 220 U. S., 187 [31 S. Ct., 361, 55 L. Ed., 428]).

"In the case of *McCoach* v. *Minehill* [*& S. H.*] *Railway Company*, 228 U. S., page 295 [33 S. Ct., 419, 57 L. Ed., 842], the Minehill Company had leased its railway in very much the same manner as in the instant case. There was an excise tax law as follows:

"'That every corporation . . . organized for profit and having a capital stock represented by shares . . . and engaged in business in any state . . . shall be subject to pay annually a special excise tax with respect to carrying on or doing business by such corpo-

ration . . . equivalent to one per centum upon the entire net income over and above 'five thousand dollars received by it from all sources during such year, exclusive of amounts received by it as dividends upon stock of other corporations . . . subject to the tax hereby imposed.'

"After the Minehill Company had leased its railroad and equipment it was held by the court in said cause that it was not liable for said excise tax.

"In the case of *United States* v. *Emery*, [*Bird, Thayer Realty Co.*], 237 U. S., 28·[35 S. Ct., 499, 59 L. Ed., 825], the court held that:

" 'A realty corporation simply collecting and distributing rental from a specified parcel of land is not doing business within the meaning of the Corporation Tax Law of 1909.'

"There are many other cases in the Federal and State Courts holding along the same line.

"From a consideration of these cases the court is of opinion that the City of Cincinnati is not 'doing business' in Tennessee, and, therefore, not liable for the tax."

Learned counsel for the State, recognizing the force and apparent applicability of the foregoing cases cited by the Chancellor, say these cases "are all governed by the same principles," and follow what counsel characterize as the *McCoach* v. *Minehill* doctrine, which they assert has been later modified, so that these holdings "do not constitute the law as it has evolved and developed up to the present time." In support of this view counsel cite *United States* v. *Atlantic Coast Line*, 4 Cir., 99 F. (2d), 6, 8 (cert. denied by the Supreme Court, 306 U. S., 645, 59 S. Ct., 584, 83 L. Ed., 1044), and cases referred to therein. The facts of this *Atlantic Coast Line* case differed from

those in the former cases and we think this difference in the facts, rather than a difference in principle, accounts for the difference in result. Counsel for the State quote the following from the opinion in the *Atlantic Coast Line* case:

"Following the Minehill decision lower courts were inclined—or induced—to broaden the range of non-taxable corporate activities until *cautioned* by the decision in *Von Baumbach* v. *Sargent Land Co.*, 242 U. S., 503, 516, 37 S. Ct., 201, 61 L. Ed., 460, and *checked* by the decision in *Edwards* v. *Chile Copper Co.*, 270 U. S., 452, 46 S. Ct., 345, 346, 70 L. Ed., 678, and *Phillips* v. *International Salt Co.* . . . 274 U. S., 718, 47 S. Ct., 589, 71 L. Ed., 1323."

Now the opinion in the *Von Baumbach case, supra,* was written by Mr. Justice DAY, who wrote, also, the opinion in the *Zonne case, supra,* reaching a different conclusion. There was no repudiation or criticism of the former holdings. We quote from this opinion [242 U. S., 503, 37 S. Ct., 204, 61 L. Ed., 460]:

"The act next came before his court in the case of *McCoach, Collector,* v. *Minehill & Schuylkill Haven R. Co.*, 228 U. S., 295, 33 S. Ct., 419, 57 L. Ed., 842, in which it was held, distinguishing the case of the *Park Realty Company, supra* [*Flint* v. *Stone Tracy Co.*, 220 U. S., 107, 31 S. Ct., 342, 55 L. Ed., 389, Ann. Cas., 1912B, 1312] and applying the case of *Zonne* v. *Minneapolis Syndicate, supra,* to the facts before the court, that a corporation which had leased all its property to another, and was doing only what was necessary to receive and distribute the income therefrom among stockholders, was not doing business within the meaning of the act.

"In *United States* v. *Emery, Bird, Thayer Realty Co.,*

237 U. S., 28, 35 S. Ct., 499, 59 L. Ed., 825, this court held that a corporation which merely kept up its organization, distributing rent received from a single lessee, was not doing business within the meaning of the act.

"It is evident, from what this court has said in dealing with the former cases, that the decision in each instance must depend upon the particular facts before the court. The fair test to be derived from a consideration of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails, and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain, and such activities as are essential to those purposes."

Putting the facts of the instant case to the "fair test" stated by Mr. Justice Day, the insistence of counsel for the appellees is plausible and probably sound, that the activities of the defendants had been so "reduced" as to exclude them from the definition of "doing business," in the sense of our statute. However, we do not find it necessary to go so far. The distinction should be kept clear between *what* constitutes doing business and *where* it is done, which is primarily the determinative issue before us. It is not the character or quantity of the business done, but the situs of performance, which has determinative effect in the instant case. This is a distinction not pertinent, or considered in the Federal cases discussed on the briefs. In the *McCoach, Zonne* and other cases relied on for the appellees, and in the *Atlantic Coast Line* case and those therein cited, which counsel for the State say modified the former holdings, Federal taxes were involved, applicable without reference to *where* the business was done.

342

Counsel for the State quote from our case of *Interstate Amusement Co.* v. *Albert,* 128 Tenn., 417, 161 S. W., 488, this paragraph:

"A foreign corporation is 'doing business' within the state when it transacts therein some *substantial part of its ordinary business.*"

This is a sound statement of the rule. But conceding, although not deciding, (1) that this Board of Trustees occupies the status of a "foreign corporation," domesticated by virtue of authority conferred by the Act of 1870; and (2) that it is transacting "some substantial part of its ordinary business," we have been unable to find facts in these pleadings showing the doing of this business "in the State." As before pointed out the two conditions must concur. There must be (1) a doing of business, and (2) a doing of a substantial part of it in Tennessee, to render these tax laws applicable.

A recent case decided by the Supreme Court of Alabama, *Hollinsworth, etc.,* v. *State,* 241 Ala., 96, 1 So. (2d), 387, 389, is pressed on our attention. The Alabama Franchise tax on corporations was held to apply to a foreign corporation which had domesticated in Alabama and employed capital in erection of dwelling houses for rent in the course of construction of its manufacturing plant. It was contended that as it was doing no business other than collecting rents on these houses, it was not subject to the tax. In the first place, the Act, Ala. 1935, p. 385, section 318, provided, unlike the Tennessee Act, that "if a corporation has qualified to do business in this State it shall for the purpose of franchise tax prima facie be held to be doing business in the State of Alabama within the meaning of this Act." Moreover, the stipulation of fact showed that the houses were "on its land

where the plant is being constructed'' and that those dwellings and the funds so collected from their rent ''should be treated 'as capital employed in doing business in Alabama,''' etc. The Court could not have done otherwise than apply the tax. Obviously, the facts of the instant case are essentially different.

We have examined other cases cited, but deem further review unnecessary. Many of them support, in principle, our *Memphis Dock, etc.,* case, which we have distinguished, and the holdings in these cases do not govern this case for the reasons indicated in that connection.

The decree of the Chancellor is affirmed.