Memphis Natural Gas Co. *v.* McCanless
(Excise Tax Case).

*(Nashville,* December Term, 1943.)

Opinion filed February 5, 1944.

CANADA, RUSSELL & TURNER, of Memphis, for complainant.

ROY H. BEELER, Atty. Gen., WILLIAM F. BARRY, Sol. Gen., and THOMAS H. MALONE, III, Asst. Atty Gen., for the State.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was filed to recover excise taxes and penalties collected from complainant under Chapters 99 and 176

of the Public Acts of 1937 and paid under protest for the years July 1, 1939—July 1, 1942. The bill was dismissed by the chancellor and the complainant has appealed.

The case may be described as an aftermath of *Memphis Natural Gas Co.* v. *Pope*, 178 Tenn., 580, 161 S. W. (2d), 211, the decree in which was affirmed by the Supreme Court of the United States in *Memphis Natural Gas Co.* v. *Beeler*, 315 U. S., 649, 62 S. Ct., 857, 86 L. Ed., 1090, in which the same complainant unsuccessfully resisted the collection of excise taxes for the years July 1, 1936-July 1, 1938, imposed by section 1316 of the Code.

The nature of complainant's organization and of its business is described generally in *Memphis Natural Gas Co.* v. *McCanless*, 180 Tenn. 688, 177 S. W. (2d), 841, (the Gross Receipts Tax Case) just decided. For a fuller description see the opinions of this Court and the Supreme Court of the United States in the case first above cited. It should be repeated here that the complainant is a Delaware corporation and has a stock transfer office in New York City. No general business, however, is transacted at either of these offices. Practically all the business of the corporation is transacted from its office at Memphis, which city is its commercial domicile.

The contention of the complainant is that since 1939 when it ceased its participation in the distribution of natural gas in Memphis as mentioned in the opinion in the Gross Receipts Tax Case, its business in Tennessee has been altogether interstate; that the Public Acts of 1937 under which the excise taxes involved were collected do not include interstate business, or if interstate business is reached thereby, the statutes run counter to the commerce clause of the Federal Constitution, Article 1,

Section 8, clause 3. The State contends that a part of complainant's business is of local character, intrastate, and further contends that the Public Acts of 1937 are valid and applicable to complainant's business even if that business be entirely of an interstate character.

This Court has not heretofore undertaken to determine the full scope of Chapters 99 and 176 of the Public Acts of 1937. The statutes are referred to in *WDOD Broadcasting Corp.* v. *Walter Stokes, Jr., Commissioner*, 180 Tenn., 677, 177 S. W. (2d), 837. In that case it was found that the greater part of the taxpayer's business was intrastate in character and clearly a business of that sort was reached by the statutes. Reference is made to *State ex rel. McCanless, Commissioner*, v. *Cincinnati Southern Ry.*, 178 Tenn., 328, 157 S. W. (2d), 833, 834. But Section 1316 of the official Code of 1932 was there under consideration. It is true that the opinion cited "Williams' Code, Sections 1316 et seq.," but the reference was to Section 1316 in the first edition of Williams Code. The opinion was handed down January 17, 1942. The Replacement Volume of Williams Code in which Chapters 99 and 176 of the Public Acts of 1937 appear as Section 1316 was not issued until 1943.

The scope of Chapters 99 and 176 of the Public Acts of 1937 can be more readily understood by a comparison of those Acts with Section 1316 of the official Code, which is: "All corporations and joint stock associations organized under the laws of the State of Tennessee, other than those organized for general welfare and not for profit and all corporations and joint stock associations organized under the laws of any other state or country for profit and doing business in Tennessee, shall, without exception, pay to the state comptroller annually an excise

tax, in addition to all other taxes, equal to three per cent. of the net earnings for their preceding fiscal year of such corporations and joint stock associations, arising from business done wholly within the state, excluding earnings arising from interstate commerce. Tennessee insurance companies shall pay on net earnings proportioned to premiums on policies on persons and property in this state.''

Chapter 99 of the Public Acts of 1937, amending Section 1316 of the Code, contains the following:

''Tax Imposed—All corporations, co-operatives conducted for profit, joint stock associations and business trusts, organized under the laws of the State of Tennessee, other than those organized for general welfare and not for profit, and all such entities organized under the laws of any other state or country for profit and doing business in Tennessee, shall, without exception, pay to the Commissioner of Finance and Taxation annually an excise tax, in addition to all other taxes, equal to four (4%) per cent of the net earnings for their next preceding fiscal or calendar year, from business done within the State.

''In the case of corporations, co-operatives, joint stock associations and business trusts doing business in Tennessee and elsewhere, the net earnings shall be apportioned as hereinafter set forth and the net earnings thus apportioned to Tennessee shall be deemed to be the earnings arising from business done within the State and shall be the measure of this tax. Such method of apportionment shall be as follows.''

Chapter 176 of the Public Acts of 1937, also amending Section 1316 of the Code, merely fixes the tax rate at 3.75% instead of 4%.

■ It will be observed that Section 1316 of the Code bases the excise tax on net earnings "arising from business done wholly within the state, excluding earnings arising from interstate commerce." Chapter 99 of the Public Acts of 1937 bases the tax on net earnings "from business done within the State." The change of phraseology in the amendatory statute is too significant to be escaped. By the failure of the Act of 1937 to exclude earnings "arising from interstate commerce," which were expressly excluded in the Code sections before rewritten, it must be concluded that the lawmakers intended to include earnings from interstate commerce as far as they could. And again the Code section based the tax on earnings from business done *wholly* within the State, while the amendatory Act based the tax on *business done within the State.* The omission of *wholly* in this connection cannot be ignored in undertaking to arrive at the meaning of the amendment.

Section 1316 of the official Code of 1932 was founded on Chapter 21 of the Public Acts of 1923 and Chapter 44 of the Public Acts of 1927. Between the enactment of these statutes and the Public Acts of 1937 the Supreme Court of the United States had delivered a number of opinions in which the right of the States to base taxes on earnings from corporations from interstate business had been clarified and apparently broadened. See subsequent quotation from *Memphis Natural Gas Co.* v. *Beeler.* These decisions were familiar to the Legislature in 1937 and we think it was the intention of that body in the enactment of Chapters 99 and 176 to take advantage of these rulings. In other words, to reach earnings from interstate business of corporations as far as possible.

Several sections of Chapter 99 of the Public Acts of 1937 with reference to the apportionment of corporate earnings to ''business done within the State,'' which are not necessary here to detail, rather strongly indicate that ''earnings . . . within the State'' took into account earnings from interstate commerce within the State.

There is still quite a controversy between the complainant and the commissioner as to whether any portion of the complainant's business in Tennessee is of a local or intrastate character. We do not find it necessary to pass on this controversy here in view of the decision of the Supreme Court of the United States in *Memphis Natural Gas Co.* v. *Beeler, supra.* In that case, in this Court and in the Supreme Court, the argument for complainant was that no part of its business was local in character. That the relation between it and Memphis Power and Light Company was only that of seller and buyer. That there was nothing like a joint enterprise in the distribution of gas. The principal ground of the decision in this Court was that a joint enterprise in distribution did exist. On this question the Supreme Court expressed itself thus [315 U. S., 649, 62 S. Ct., 861, 86 L. Ed., 1090]: ''We cannot say that there is not a substantial basis for the state court's conclusion that in substance the contract called for the contribution of the services and facilities of the companies to a joint enterprise, the taxpayer's delivery of gas into the mains of the Memphis company for distribution to consumers, and a division between the two companies of the operating profits after providing for certain agreed initial costs and expenses.''

Waiving this point, however, and passing to complainant's contention that all its business was interstate, the Supreme Court expressed itself thus: "In any case even if taxpayer's business were wholly interstate commerce, a nondiscriminatory tax by Tennessee upon the net income of a foreign corporation having a commercial domicile there, cf. *Wheeling Steel Corp.* v. *Fox* [298 U. S., 193, 56 S. Ct., 773, 80 L. Ed., 1143], *supra*, or upon net income derived from within the state, *Shaffer* v. *Carter*, 252 U. S., 37, 57, 40 S. Ct., 221, 227, 64 L. Ed., 445 [458]; [*State of*] *Wisconsin* v. *Minnesota Min. & Mfg. Co.*, 311 U. S., 452, 61 S. Ct., 253, 85 L. Ed., 274; cf. *People of State of New York ex rel. Cohn* v. *Graves*, 300 U. S., 308, 57 S. Ct., 466, 81 L. Ed., 666, 108 A. L. R., 721, is not prohibited by the commerce clause on which alone taxpayer relies. *United States Glue Co.* v. *Oak Creek*, 247 U. S., 321, 38 S. Ct., 499, 62 L. Ed., 1135, Ann. Cas. 1918E, 748; *Underwood Typewriter Co.* v. *Chamberlain*, 254 U. S., 113, 119 [120], 41 S. Ct., 45, 65 L. Ed., 165, 168, 169; cf. *Bass, Ratcliff & Gretton* v. *State Tax Commission*, 266 U. S., 271, 45 S. Ct., 82, 69 L. Ed., 282; *Western Live Stock* v. *Bureau of Revenue*, 303 U. S., 250, 255, 58 S. Ct., 546, 82 L. Ed., 823 [827], 115 A. L. R., 944. There is no contention of showing here that the tax assessed is not upon net earnings justly attributable to Tennessee. *Underwood Typewriter Co.* v. *Chamberlain* [254 U. S., 113, 41 S. Ct., 45, 65 L. Ed., 165], *supra*; cf. *Bass Ratcliff & Gretton* v. *State Tax Commission* [266 U. S., 271, 45 S. Ct., 82, 69 L. Ed., 282], *supra*; *Butler Bros.* v. *McColgan*, 315 U. S., 501, 62 S. Ct., 701, 86 L. Ed. [991]. It does not appear upon any theory the tax can be deemed to infringe the commerce clause."

From the foregoing it seems evident that the Supreme Court ruled that if, as insisted, all complainant's business was interstate and it was engaged in no joint enterprise of distribution, nevertheless it was still liable for the tax. In other words, treating the imposition as reaching earnings from interstate commerce, nevertheless the tax was valid.

■ The complainant insists that the language of the Supreme Court last quoted was *obiter dicta*. To this we cannot agree. The Court refused to find that there was no substantial basis for this Court's conclusion as to the joint enterprise, and further held, disregarding joint enterprise and conceding complainant's business was all interstate, there was still liability. The concluding language of the Supreme Court was, "It does not appear that upon any theory the tax can be deemed to infringe the commerce clause."

■ Complainant argues at some length that the Supreme Court expressed itself as just above quoted entertaining the idea that Section 1316 of the Code levied an income tax rather than an excise tax. Payment of the tax is not a condition precedent to a corporation's doing business in the State. The tax is collectible at the end of the fiscal year by ordinary processes for collection of taxes. The result is to exact a nondiscriminatory tribute from the net profits of every corporation such as this from its investments and sales in Tennessee Code, Section 1316(2). The validity of the taxing statute as applied is challenged solely on the ground that it burdens commerce. The burden of a technical income tax statute would be the same, or perhaps greater where the commercial domicile was maintained in the taxing State. In

protecting commerce the Supreme Court is concerned with the effect of a tax rather than its name.

We do not believe that the Supreme Court labored under any misapprehension as to the nature of the tax involved. Reference to the brief of counsel for complainant in *Memphis Natural Gas Co.* v. *Beeler* in the Supreme Court shows that he stressed the fact that the tax was a privilege tax or an excise tax. Moreover, at least two of its decisions cited by the Supreme Court to support its conclusion that upon no theory advanced was the tax invalid were cases dealing with franchise or excise taxes measured by or based on corporate earnings; to wit, *Underwood Typewriter Co.* v. *Chamberlain*, 254 U. S., 113, 41 S. Ct., 45, 65 L. Ed., 165, and *Bass, Ratcliff & Gretton* v. *State Tax Commission*, 266 U. S., 271, 45 S. Ct., 82, 69 L. Ed., 282. In the *Underwood case* the Court said [254 U. S., 113, 41 S. Ct., 46, 65 L. Ed., 165] : ''Payment of the tax is not made a condition precedent to the right of the corporation to carry on business, including interstate business. Its enforcement is left to the ordinary means of collecting taxes. *St. Louis Southwestern Ry. Co.* v. *Arkansas*, 235 U. S., 350, 364, 35 S. Ct., 99, 59 L. Ed., 265; *Atlantic & Pacific Telegraph Co.* v. *Philadelphia*, 190 U. S., 160, 163, 23 S. Ct., 817, 47 L. Ed., 995. The statute is, therefore, not open to the objection that it compels the company to pay for the privileges of engaging in interstate commerce. A tax is not obnoxious to the commerce clause merely because imposed upon property used in interstate commerce, even if it takes the form of a tax for the privilege of exercising its franchise within the state. *Postal Telegraph Cable Co.* v. *Adams*, 155 U. S., 688, 695, 15 S. Ct., 360, 39 L. Ed., 311. This tax is based upon the net profits earned within the state. That a tax measured

by net profits is valid, although these profits may have been derived in part, or indeed mainly from interstate commerce is settled. *United States Glue Co.* v. *Oak Creek*, 247 U. S., 321, 38 S. Ct., 499, 62 L. Ed., 1135, Ann. Cas. 1918E, 748; *Shaffer* v. *Carter*, 252 U. S., 37, 57, 40 S. Ct., 221, 64 L. Ed., 445. Compare *Peck & Co.* v. *Lowe*, 247 U. S., 165, 38 S. Ct., 432, 62 L. Ed., 1049. Whether it be deemed a property tax or a franchise tax, it is not obnoxious to the commerce clause.''

Counsel for the complainant has submitted an elaborate review of decisions of the Supreme Court of the United States to establish his proposition that, unless some intrastate business is pursued by a corporation within the taxing state an excise tax cannot be based or measured by apportioned earnings from interstate business. This does not coincide with *Memphis Natural Gas Co.* v. *Beeler* as we read the language of that opinion. We are bound by the ruling in that case and if we have misconceived this ruling, complainant's remedy is an appeal to that Court. Certainly it is not for this Court to question the support given to the language of the Supreme Court by its view of its previous decisions.

▇ There remains to be disposed of the question of statutory penalties imposed on complainant for delinquency in the payment of these taxes. Complainant is also suing for the recovery of these penalties herein and we think it is entitled to the recovery of penalties on all the excise tax for which it became liable up to the time of the decision of the Supreme Court of the United States in *Memphis Natural Gas Co.* v. *Beeler, supra.* The opinion was delivered in that case on March 30, 1942.

This controversy is being waged in a court of equity and this Court, since *East Tennessee Brewing Co.* v.

*Currier*, 126 Tenn., 535, 150 S. W., 541, has exercised the power of remitting penalties imposed upon taxpayers when the equities of the case seem to demand. See also *Shipp* v. *Cummings*, 158 Tenn., 526, 14 S. W. (2d) 747, and *State et al.* v. *Rowan et al.*, 171 Tenn., 612, 106 S. W. (2d) 861.

The record indicates that the complainant has acted in good faith throughout this controversy. Its able attorneys urgently insisted that it was not liable for the tax and so advised up until the time of the decision of the Supreme Court of the United States. The office of the Attorney General at first advised that complainant was not liable for the tax, although later a different conclusion was reached by that office and the complainant so notified. This Court thought there was sufficient doubt about the complainant's liability to justify us in refusing to *supersede* an injunction issued below to restrain the collection of the tax and the injunction was permitted to remain in force until the Supreme Court of the United States acted. On final disposition of the case here this Court was divided as to complainant's liability and a dissenting opinion was filed. Under all the circumstances we are of opinion that the exaction of this large penalty by the State would be harsh treatment of an honest taxpayer. It is not the policy of the Legislature, nor the policy of the Court so far as we may consider policy, to impose inequitable burdens on business enterprises locating a commercial domicile in this State.

As to the penalties upon the tax for which the complainant became liable after the decision of the Supreme Court in *Memphis Natural Gas Co.* v. *Beeler*, we see no reason to interfere with the result reached below. If we have correctly interpreted that opinion of the Supreme

Court, there is no room for doubt about complainant's liability. If we have misread that opinion, that Court will doubtless relieve the complainant of the principal sum of the tax, as well as penalties, for which it became liable after its withdrawal from the joint adventure of distribution of natural gas on June 27, 1939. Penalties exacted of the taxpayer in the excise cases and in the franchise case following were upwards of $30,000.

Modified as herein indicated, the decree of the chancellor will be affirmed. Three-fifths of the costs will be taxed to the complainant.