**SOUTH CENTRAL BELL TELEPHONE COMPANY, Appellee,**

v.

**Kathryn B. CELAURO, Commissioner of Revenue, State of Tennessee, Appellant.**

Supreme Court of Tennessee, at Nashville.

Aug. 10, 1987.

W.J. Michael Cody, Atty. Gen., Joe C. Peel, Asst. Atty. Gen., Nashville, for appellant.

W.W. Berry, Raymond Whiteaker, Nashville, for appellee.

## OPINION

CANTRELL, Special Justice.

This appeal involves the collection of sales taxes and gross receipts taxes on "end user" charges paid by local telephone customers as part of the costs of interstate long distance service. South Central Bell (SCB) paid the taxes under protest and filed suit for reimbursement. The Chancellor ordered reimbursement, holding that the end user charge is derived from interstate commerce which the legislature has exempted from both taxes. SCB argues in addition that since the end user charge is derived from interstate commerce, any attempt by the state to impose a tax on it would violate the Commerce Clause of the United States Constitution.

### ARE THE END USER CHARGES DERIVED FROM INTERSTATE COMMERCE?

#### A. THE TELEPHONE SYSTEM

The making of an interstate long distance telephone call involves doing business with two or more different companies. The first is the company that owns the local system; i.e., the line from the subscriber to a central station and the equipment required to connect the call with a local number or to a long distance carrier. The line from the subscriber to the central office is known as the "local loop". An interstate long distance call passes over the local loop to the central office which switches the call through the switching equipment to a "point of presence" where the call is picked up by the long distance carrier.

The long distance carrier is the second company involved in interstate long dis-

tance service. From the point of presence the call proceeds over the long distance carrier's equipment to another point of presence in the state of destination and there it is transmitted to the switching equipment of another local carrier. It is then routed by the local carrier's equipment over another local loop to the party being called.

## B. THE REGULATORY SCHEME

■ Because the local company supplies services that are essentially local, it is regulated by the state regulatory body. The long distance company, on the other hand, because its business involves commerce between the states, is regulated by the Federal Communications Commission. There is, however, a part of the local system that also falls under the jurisdiction of the Federal Communications Commission. In *Smith v. Illinois Bell Telephone Company,* 282 U.S. 133, 51 S.Ct. 65, 75 L.Ed. 255 (1930), the U.S. Supreme Court pointed out that because the local plant is also used for interstate calls, an appropriate percentage of local plant costs should be placed within the jurisdiction of federal rather than state regulators.

The FCC, along with a federal-state joint board, decides what part of the local plant costs is from supplying interstate service and what part is essentially local. *See N.A.R.U.C. v. FCC,* 737 F.2d 1095 (D.C.Cir. 1984). At the present time approximately twenty-six percent of the costs of the local plant are considered to be from the interstate system and thus under the jurisdiction of the FCC. *Id.*

Prior to 1984 the interstate portion of the local plant costs were recovered from toll charges paid by long distance callers on a traffic-sensitive basis. As a result, heavy long distance users were subsidizing the costs of the local telephone network. The FCC became concerned that the larger long distance users would adopt alternative telecommunication systems and bypass the national telephone network. *N.A.R.U.C. v. FCC,* 737 F.2d at 1109. To correct this imbalance the FCC required that local subscribers pay a flat monthly fee (the end user charge) to pay for the "fixed exchange plant costs that are assigned to interstate service." *MTS and WATS Market Structure: FCC Docket 78–72, Phase I, Third Report and Order,* 93 F.C.C.2d (1983). Thus in January of 1984 multi-line businesses were required to begin paying an end user charge in an amount of $6.00 per month—or less, depending on the local exchange company's particular situation. In Tennessee SCB's charge to its multi-line business customers is $4.41 per month. Residential customers and single-line businesses were required to pay $1.00 a month beginning in January of 1985. In June of 1986 the charge was increased to $2.00 per month.

Responding to an argument that ordering these charges was beyond the power of the FCC, the Court in *N.A.R.U.C. v. FCC,* said:

> Petitioners here lose sight of the Commission's main theme. The end user charge reflects costs caused not by a subscriber's actually making interstate calls, but by the subscriber's connection into the interstate network, which enables the subscriber to make interstate calls. The same loop that connects a telephone subscriber to the local exchange necessarily connects that subscriber into the interstate network as well. Under *Smith,* a portion of the costs of that loop are assigned to the interstate jurisdiction, for recovery under the regulatory authority of the FCC, on the basis of a complex division taking into account statistical calling patterns. That separations decision, however, does not affect the cost of the loop. Local telephone plant costs are real; they are necessarily incurred for each subscriber by virtue of that subscriber's interconnection into the local network, and they must be recovered regardless of how many or how few interstate calls (or local calls for that matter) a subscriber makes. The FCC may properly order recovery, through charges imposed on telephone subscribers, of the portion of those costs that, in accordance with *Smith,* have been placed in the interstate jurisdiction. 737 F.2d at 1113.

It is the end user charges that the Department of Revenue claims are subject to the sales tax and the gross receipts tax. Since the charges are ordered by the FCC as a means of making all customers share in the costs of interstate service, we conclude that the income is generated from interstate commerce.

## MAY THE STATE TAX INCOME GENERATED FROM INTERSTATE COMMERCE?

■ The Constitution of the United States gives to the Congress the power to regulate commerce among the several states. U.S. Const. Art. I, § 8, cl. 3. The states may not impose taxes that interfere with that congressional power. *I.M. Darnell & Son Company v. City of Memphis*, 208 U.S. 113, 28 S.Ct. 247, 52 L.Ed. 413 (1908). However even if the taxpayer's business within the state is entirely interstate commerce, any nondiscriminatory tax by Tennessee upon the net income of a foreign corporation derived from business *within the State* is not prohibited by the Commerce Clause. *Shaffer v. Carter*, 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445 (1920); *Memphis Natural Gas Company v. McCanless*, 180 Tenn. 695, 177 S.W.2d 843 (1944).

■ In *Spector Motor Services, Inc. v. O'Connor*, 340 U.S. 602, 71 S.Ct. 49, 95 L.Ed. 573 (1951) the Supreme Court held that a tax on *the privilege of doing business* is unconstitutional if applied against what is exclusively interstate commerce. The *Spector* rule, having its origin in *Freeman v. Hewit*, 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265 (1946), looked only to the fact that the incidence of the tax is the privilege of doing business. The rule ignored the practical effect of the tax. The states soon learned, however, to avoid this pitfall by merely changing the words of the taxing statutes while maintaining the same tax on the identical interstate business within the state. *See Railway Express Agency v. Commonwealth of Virginia*, 358 U.S. 434, 79 S.Ct. 411, 3 L.Ed.2d 450 (1959); *Northwestern States Portland Cement Company v. State of Minnesota*, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959); *Colonial Pipeline Company v. Traigle*, 421 U.S. 100, 95 S.Ct. 1538, 44 L.Ed.2d 1 (1975). Finally, reiterating the rule that interstate commerce may be required by the states to "pay its own way" the Supreme Court in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977) overruled *Spector* and held that businesses engaged in interstate commerce may be taxed by the states if (1) the taxed activity has a substantial nexus to the taxing state; (2) the tax is fairly apportioned to the taxing state; (3) the tax does not discriminate against interstate commerce; and (4) the tax is fairly related to services provided within the state. Thus while the end user charges are derived entirely from interstate commerce the State may base a tax on that income by a properly-drawn statute.

## THE GROSS RECEIPTS TAX

■ The legislature has imposed a gross receipts tax on the privilege of operating a telephone business in Tennessee. The amount of the tax is equal to three percent (3%) of the gross receipts derived from *intrastate* business in this state. T.C.A. § 67-4-407(a). Apparently in order not to be mistaken the legislature reiterated its intent with respect to this tax by saying:

> It is the intention of this section to levy a tax for the privilege of engaging in intrastate commerce carried on wholly within the state and *not a part of interstate commerce.* (emphasis supplied) T.C.A. § 67-4-407(b).

Having concluded that the income from the end user charges is derived entirely from interstate commerce, we are of the opinion that the gross receipts tax does not apply to this income. Therefore, SCB is entitled to a refund of the gross receipts taxes paid under protest.

## THE SALES TAX

T.C.A. § 67-6-205 imposes the sales tax on certain services defined in the Code including the furnishing of telephone service. T.C.A. § 67-6-102(13)(F)(iii). The Code also says:

It is not the intention of this chapter to levy a tax upon articles of tangible personal property imported into this state or produced or manufactured in this state for export; nor is it the intention of this chapter to levy a tax on bona fide interstate commerce. T.C.A. § 67–6–313.

 It is this provision on which the chancellor relied in holding that the statute exempted the end user charges from the sales tax. However, this Court in *Vector Company, Inc. v. Benson*, 491 S.W.2d 612 (Tenn.1973) interpreted this section to mean only that the tax would not apply where the state was prohibited from levying the tax because of the Commerce Clause. In *Texas Eastern Transmission Corp. Benson*, 480 S.W.2d 905 (Tenn.1972), this Court turned the rule around and stated it in a positive way:

> While this provision is a recognition by the Legislature that there are constitutional limitations upon the power of a state to levy a tax upon goods moving in interstate commerce, it presumably intended to extend the taxing power of the State of Tennessee to the fullest extent allowed under the Commerce clause. 480 S.W.2d at 907. *See also Memphis Natural Gas Co. v. McCanless*, 180 Tenn. 695, 177 S.W.2d 843 (1944).

Thus, we conclude that the sales tax may be collected on the end user charges if (1) the taxed activity has a substantial nexus to the state, (2) the tax is fairly apportioned to the state, (3) the tax does not discriminate against interstate commerce, and (4) the tax is fairly related to services provided within the state. *See Complete Auto Transit v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977).

It would be hard to imagine a set of facts where the above test is more satisfactorily met. Here the end user charges are paid by local subscribers for the use of the local telephone system in interstate commerce. Therefore the taxed activity has a substantial nexus to the state. The tax is apportioned to the state by the FCC rule itself which makes local subscribers pay the charge on which the tax is based. Therefore, there will be no occasion for any other state to consider this income as a basis for any tax of its own. The tax does not discriminate against interstate commerce. And, finally, there is no question raised about the tax being unrelated to services provided within the state. We, therefore, hold that the state can and does properly collect the sales tax on the end user charges.

The judgment of the court below ordering a refund of the gross receipts tax is affirmed. The judgment ordering a refund of the sales tax is reversed. Tax the costs on appeal equally to the appellant and the appellee.

HARBISON, C.J., and FONES, BROCK and DROWOTA, JJ., concur.