GENERAL SHOE CORPORATION *v.* STOKES, COM'R OF FINANCE AND TAXATION, *et al.* (2 Cases).

SAME *v.* McCANLESS, COMMISSIONER, *et al.* (6 Cases).

(*Nashville*, December Term, 1943.)

Opinion filed June 10, 1944.

BASS, BERRY & SIMS and CECIL SIMS, all of Nashville, for complainant-appellant.

WILLIAM F. BARRY, Solicitor-General, and THOMAS H. MALONE, III, Assistant Attorney-General, for defendant-appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The complainant, General Shoe Corporation seeks to recover herein from the Commissioner of Finance and Taxation a part of excise taxes paid by it for several years, the portion sued for having been paid under protest. From an adverse decree of the chancellor the complainant appeals.

The complainant is a Tennessee corporation manufacturnig shoes in ten plants. Eight of these plants are located in Tennessee, one in Kentucky, and one in Georgia. The general office is in Nashville.

Section 1316 of the Code, as amended, levies an excise tax on the net earnings of corporations "from business done within the state" and provides:

"(1) If the principal business in this state is manufacturing or if it is any form of collecting, assembling, or processing of goods or material, the entire net earnings shall be apportioned to Tennessee on the basis of the ratio

obtained by taking the arithmetical average of the following three ratios:

"(a) The ratio of the value of its real estate and tangible personal property in this state on the date of the close of the fiscal year is to the value of its entire real estate and tangible personal property, with no deductions on account of encumbrances thereon.

"(b) The ratio of the total cost of manufacturing, collecting, assembling or processing within this state, to the total cost of manufacturing, collecting, assembling or processing within and without the state.

"(c) The ratio of the gross sales to customers within Tennessee is to the total gross sales from all sources."

We do not understand that complainant criticizes this formula in its general application. It is apparently fair and a similar formula has been frequently approved by the courts.

The complainant insists first, as applied to it, that the Commissioner misconceived the provisions of the statute in determining the amount of the tax, and, second, that the Commissioner's application of the statute to the facts of complainant's case brings the statute in conflict with Section 8 of Article 1 of the Tennessee Constitution and the Fourteenth Amendment to the Federal Constitution.

The criticism is directed at the method by which the Commissioner fixed the second ratio in the formula. The ratio between the total cost of manufacturing "within the state" and the total cost of manufacturing "within and without the state."

Complainant offered proof that 51% of its manufacturing cost was for raw material, leather, etc., and that 97% of this raw material was purchased in Massachusetts.

It is conceded that the cost of raw material is a part of manufacturing cost but it is said that 97% of that cost was incurred without the State. The Commissioner, however, charged the cost of raw material used within the State, wherever purchased, as a part of the cost of manufacturing within the State.

Deducting from the cost of manufacture in Tennessee the cost of the material so used but purchased out of the State lowers the second ratio of the formula and results in allocating 42% of complainant's net profits to this State. Including in the cost of manufacture in Tennessee the cost of raw material purchased out of the State raises the second ratio of the formula and results in 56% of complainant's net profits being allocated to this State. The latter result was reached by the Commissioner.

■■ Complainant's theory that the cost of 97% of the raw material, nearly all bought in Massachusetts, should be classed as cost of manufacturing without the State seems rather fanciful. It allocates manufacturing cost to a State where complainant has no factory, does no manufacturing, has no place of business and pays no taxes. If, however, we eliminate the cost of raw material purchased out of Tennessee from the cost of manufacturing in Tennessee, complainant still fails to show that more than a fair proportion of its net profits have been taxed by this State and we think that complainant has failed to show that the tax levied against it is arbitrary and violates its constitutional rights.

■ If the method of allocation used by the Commissioner is fairly calculated to assign to Tennessee that portion of the net income reasonably attributable to the business done in this State, no constitutional right of the complainant is infringed. *Butler Bros.* v. *McColgan,*

315 U. S., 501, 62 S. Ct., 701, 86 L. Ed., 991; *Ford Motor Co.* v. *Beauchamp*, 308 U. S., 331, 60 S. Ct., 273, 84 L. Ed., 304; *Bass, Ratcliff & Gretton* v. *State Tax Commission*, 266 U. S., 271, 45 S. Ct., 82, 69 L. Ed., 282.

"One who attacks a formula of apportionment carries a distinct burden of showing by 'clear and cogent evidence' that it results in extraterritorial values being taxed. See *Norfolk & W. R. Co.* v. *[State of] North Carolina*, 297 U. S., 682, 688, 56 S. Ct., 625, 628, 80 L. Ed. 977." *Butler Bros.* v. *McColgan, supra* [315 U. S., 501, 62 S. Ct., 704, 86 L. Ed., 991.]

The complainant relies largely on *Hans Rees' Sons* v. *State of North Carolina*, 283 U. S., 123, 51 S. Ct., 385, 75 L. Ed., 879, but in that case, as noted by the Supreme Court in *Butler Bros.* v. *McColgan*, the taxpayer showed that "in any aspect of the evidence" its income attributable to North Carolina was "out of all appropriate proportion to the business" transacted by the taxpayer in that State. No such showing is made here.

According to the testimony of the complainant's auditor the corporation maintains a buying department. It has buyers, some of whom go to Boston every two weeks and purchase raw material in large quantities. The auditor testifies that the savings from these mass purchases result in 51% of the profits from the corporation's business. There is nothing in the record contradictory and we may accept this figure.

For the year taken by complainant for illustration, including the cost of all raw material used, 87% of complainant's total cost of manufacture was incurred in Tennessee. We may assume that labor costs, etc., are practically the same in Tennessee as in the adjoining States of Georgia and Kentucky, in each of which States complain-

ant has one plant. This being true, 87% of the raw material purchased is used in Tennessee and the Tennessee purchases contribute 87% of the 51% of the profit of mass purchasing. 87% of 51% is 44% and this 44% profit from mass purchases is reasonably attributable for taxing purposes to this State.

· The complainant figures that the cost of manufacture in Tennessee, omitting the cost of material purchased out of the State, is 44% of the total and by using 44% instead of 87% as the second ratio in the formula, complainant justifies its claim of excessive taxation. The State, however, is entitled to look to the profits of the complainant by reason of its mass purchases which it entirely ignores in its figures. Adding a fourth ratio, representing mass purchases, we have as a formula for determining profits attributable to Tennessee, real estate and tangible property 80.9%, cost of manufacture 44%, sales 2.6%, purchases 87%. Averaging these ratios by dividing them by four the result is 53.6%. The difference between the result thus reached and the result reached by the Commissioner is only 3.2% and all the cases say that in allocation of net profits only approximate accuracy is possible or required. This difference of 3.2% seems inconsequential.

Or we may use another method of calculation. Complainant concedes that 42% of its net profits was fairly attributable to Tennessee. In this calculation profits from mass purchases were not included. As we have seen, some 44% of this profit is attributable to Tennessee and if we add this 44% to the 42% conceded, the result would be 86% of the profits of the complainant attributable to business done within this State.

*Butler Bros.* v. *McColgan*, 315 U. S., 501, 62 S. Ct., 701, 86 L. Ed., 991, contains the latest ruling of the Supreme

Court that is here in point and is controlling. Butler Brothers was a corporation with its home office in Chicago, Illinois. It was engaged in the wholesale dry goods business with stores in seven States, one of which was in San Francisco, California. That State levied an excise tax on the net incomes of corporations from business within the State. The California tax commissioner allocated about 8% of the total net income of the corporation to his State. He averaged the percentages which "(a) value of real and tangible personal property, (b) wages, salaries, commissions and other compensation of employees, and (c) gross sales, less returns and allowances, attributable to the San Francisco house, bore to the corresponding items of all houses" of the taxpayer.

Butler Brothers' business, as a whole, showed a profit of $1,149,677 for the year in question but, treating the San Francisco house independently, it showed a loss of $82,851. Nevertheless the Supreme Court upheld the allocation of income claimed by California. This was because there was unified management and mass purchasing for all the houses from which savings and corresponding profits resulted. There was no showing by the taxpayer that the percentage of the contribution of the San Francisco business to such profits was different from the percentage of the total profits that was taxed.

Obviously the case before us is a stronger one for the State.

Affirmed.