R. J. Reynolds Tobacco Co. *v.* Carson, Commissioner of Finance and Taxation, *et al.*

(*Nashville*, December Term, 1947.)

Opinion filed July 17, 1948.

158

Dudley Porter, Jr., and Tyne, Peebles, Henry &
Tyne, all of Nashville, for complainant.

Roy H. Beeler, Attorney-General, William F. Barry, Solicitor-General, and Harry Phillips, Assistant Attorney-General, for defendants.

Mr. Justice Gailor delivered the opinion of the Court.

This is a suit by the Tobacco Company to recover excise and franchise taxes, back assessed November 18, 1946, and paid under protest, for the years 1941 through 1945, in the sum of $54,362.17 with interest. The Chancellor rendered a decree for the Complainant for the taxes due for the year preceding July 1, 1941, on the ground that their back assessment and collection were barred by the 6-year Statute of Limitations, but held the Complainant liable for the taxes assessed for the years 1942 through 1945. From the parts of the decree that are adverse to their respective interests, both parties have appealed and assigned errors.

The Tobacco Company sells Camel cigarettes and other tobacco products in Tennessee in two ways: (1) It owns and operates a fleet of motor vehicles which are loaded with the Company's products and from which sales are made to customers direct. There is no controversy about liability for taxes on this operation from which the gross sales for the years in question were from $150,000 to $175,000 per year. (2) By a very much larger operation, the Tobacco Company ships carloads of its products to public warehouses in Memphis and Nashville, where the merchandise is stored in the name of the Tobacco Company, and whence orders are shipped to customers on order of the Company by employees of the warehouses, or in some cases deliveries by the warehouses to customers in Memphis and Nashville, on orders

from the Tobacco Company. When the merchandise comes to rest in the public warehouses, it has not been sold to or ordered by customers. The bulk of the sales made thereafter is to customers in Tennessee, but some orders are filled for customers in other States, and shipped interstate by the warehouses. Some orders are made on the stock in warehouses by the traveling salesmen of the Complainant, but most of the orders to the warehouses originate from the home office of the corporation in North Carolina, which approves all credit to customers.

On this part (2) of its operation from which Complainant's sales grossed from 6 to 9 million dollars per year from 1941 through 1945, the Company insists that it is not liable for franchise and excise taxes, as it was held to be by the Defendant Commissioner, or his predecessor. The determination of this liability is the main issue in the present suit.

By its bill and assignments of error, the Complainant contends that by agreement reached with the Commissioner of Finance and Taxation after conferences in 1937 and 1938, it made no return and paid no franchise and excise taxes on sales through warehouses during the years 1941 through 1945, and that therefore, the back assessment to collect taxes on the sales through warehouses is, on account of the agreement with the Commissioner, inequitable and unjust; that sales through public warehouses were not sales "made through or by offices, agents or branches located in Tennessee;" that the decision of this Court in *Sealed Power Co. v. Stokes*, 174 Tenn. 493, 127 S. W. (2d) 114, was erroneously held by the Chancellor to determine the present controversy; and finally, that the levy of these taxes by the Depart-

ment of Finance and Taxation, as it was approved and validated by the Chancellor, violated Art. I, sec. 8 and the 14th Amendment of the Constitution of the United States and sec. 8, Art. I of the Constitution of Tennessee.

The excise tax and the franchise tax are both privilege taxes (*Corn* v. *Fort*, 170 Tenn. 377, 95 S. W. (2d) 620, 106 A. L. R. 647) levied on corporations for the privilege of doing business in Tennessee. The excise tax is measured by the "net earnings" (*Bank of Commerce & Trust Co.* v. *Senter*, 149 Tenn. 569, 596, 260 S. W. 144) within the State, and the franchise tax undertakes to reach the use of the corporate franchise and is based on that proportionate part of the corporate capital stock, surplus and undivided profits employed in doing the business in Tennessee. Obviously, the amount due for excise tax being based on "net earnings" in any year can be calculated with precision from the corporate books, but the amount of the franchise tax cannot be reached with such accuracy and must be, in its final analysis, a matter of opinion and approximation.

However, both the franchise and excise tax Acts contain a formula for calculating the amount of taxes due from foreign corporations and the validity of the formula is not in controversy. For the franchise tax on the Complainant the formula is:

"(2) If the principal business in this state is selling, distributing, dealing in or using tangible personal property the capital stock, surplus and undivided profits shall be apportioned to Tennessee on the basis of the ratio obtained by taking the arithmetical average of the following two ratios:

"(a) The ratio of the value of its real estate and tangible personal property in this state on the day of the

close of its fiscal year is to the value of its entire real estate and tangible personal property then owed ("owned"—Ch. 100 Pu.A.1937) by it, with no deductions on account of encumbrances thereon.

"(b) . The ratio of the total sales made through or by offices, agencies, or branches located in Tennessee during the income year to the total sales made everywhere during said year." Williams' Code, sec. 1248.145(2).

For the excise tax the formula is:

"(2) If the principal business in this state is selling, distributing, dealing in or using tangible personal property, the entire net earnings shall be apportioned to Tennessee on the basis of the ratio obtained by taking the arithmetical average of the following three ratios:

"(a) The ratio of the value of its real estate and tangible personal property in this state on the day of the close of the fiscal year is to the value of its entire real estate and tangible personal property then owned by it, with no deductions on account of the encumbrances thereon.

"(b) The ratio of the total sales made through or by offices, agencies, or branches located in Tennessee during the income year to the total sales made everywhere during said year.

"(c) The ratio of the gross sales to customers within Tennessee is to the total gross sales from all sources." Williams' Code, sec. 1316(2).

From the tax returns for the years in question, it appears that for this taxpayer 1316 (b) and (c) are the same figure. The only question on these formulæ presented on this appeal is whether the warehouse operation of the Complainant is to be construed as "sales made through or by officers, agencies, or branches located in Tennessee." Sec. 1248. 145(2) (b), sec. 1316(2) (b).

■ Where, as here, in a legislative act, words are used in a series, effect must be given to every word (*Mensi* v. *Walker,* 160 Tenn. 468, 26 S. W. (2d) 132), and it must be presumed that the Legislature did not use three words where one would do, and that each was intended to have an individual meaning of its own different from the meaning of the other two words. So here, although it cannot be said that under the facts, the public warehouses in Nashville and Memphis were ''offices'' or ''branches'' of the Tobacco Company, yet the warehouses are definitely ''agencies'' of the Tobacco Company for the storage of its products and delivery of those products to customers in Tennessee and neighboring states.

■ In the original bill, the Complainant alleged that in 1937 or 1938 the business done through the warehouses was held by the then Commissioner of Finance and Taxation to be exempt from excise and franchise taxes. In its answer the State denies such agreement with the Commissioner and such exemption, and asserts that the warehouse operation of the Complainant was first discovered by the Department in 1946, shortly before the back assessment was made, and that the only agreement that the Complainant had with the Department in 1937 or 1938 was that it was liable for the taxes as a ''selling'' and not a ''manufacturing'' corporation. The Chancellor found that the Complainant had failed to show the alleged agreement with the Department of Finance and Taxation, and the record supports that finding, but we prefer to base our affirmance of the Chancellor on the rule of law that the Commissioner of Finance and Taxation had no authority to waive the State's right to collect the tax, and that the facts here, since they fail to show any injury to the taxpayer, are insufficient to create an estoppel:

"The policy of the state is reflected in the act, and that policy has not been changed. Appellant can have no advantage from the circumstance that several of the commissioners, after the act became effective, erroneously permitted it to withhold from its net earnings, reported as a measure of its tax, the interest on tax exempt bonds." *Natl. Life & Acc. Ins. Co.* v. *Dempster,* 168 Tenn. 446, 461, 79 S. W. (2d) 564, 569.

"The defense of laches is based upon the doctrine of equitable estoppel, and, so far as we are advised, is only applied where the party invoking it has been prejudiced by the delay." *State* v. *McPhail,* 156 Tenn. 459, 460, 2 S. W. (2d) 413.

The unpublished opinion of this Court in *State, ex rel.* v. *The Texas Company,* (July 1938) was unpublished because it was not to be taken as general authority, and was to be strictly confined to its own facts, and in refusing to consider it as authority in the present case, it is sufficient for us to say that the facts here do not bring this case within the purview of that decision.

Our construction of the questioned subsection of sections 1248.145 and 1316 of the Code, *supra,* is fully supported by the decision of this Court in *Sealed Power Corp.* v. *Stokes,* 174 Tenn. 493, 127 S. W. (2d) 114. The following excerpts from the opinion are here pertinent:

"This is a suit to recover State taxes paid under protest. Complainant is a foreign corporation which confines the business it does in Tennessee to that described in Section 1 of Chapter 106, Public Acts of 1937, namely, the storage of goods in and distribution thereof from a public warehouse owned in Tennessee, for the purpose of

convenient delivery of such goods. (174 Tenn. at pages 495, 496, 127 S. W. (2d) at page 115.)

. . . . . .

"Franchise and excise taxes were demanded of complainant, refused, paid under protest, and this suit brought to test its liability, the theory of complainant being that, on the facts above stated, and having complied with the provisions of Section 2, it is exempt from excise and franchise taxes, as well as from the filing fee (174 Tenn. at page 496, 127 S. W. (2d) at page 115.)

. . . . . .

"We do not understand complainant below to deny liability for the taxes involved, but for the alleged excluding provisions of Chapter 106, *supra, for it appears to be well settled that a foreign corporation (unless excused by this Act), carrying on in Tennessee the business being carried on by complainant, is doing an intrastate business subjecting it to liability for the franchise and exercise privilege taxes. . . . American Steel & Wire Co.* v. *Speed,* 110 Tenn. 524, 525, 75 S. W. 1037, 100 Am. St. Rep. 814; *American Steel & Wire Co.* v. *Speed,* 192 U. S. 500, 24 S. Ct. 365, 48 L. Ed. 538; *General Oil Co.* v. *Crain,* 209 U. S. 211, 231, 28 S. Ct. 475, 52 L. Ed. 754, 766; *Sonneborn Bros.* v. *Cureton,* 262 U. S. 506, 509, 43 S. Ct. 643, 67 L. Ed. 1095, 1097." (174 Tenn. at pages 495, 496, 497, 127 S. W. (2d) at page 115.) (Italics ours.)

The foregoing statement, italicized, is fully supported by the authorities cited.

█ Now since it was held in the *Sealed Power Case* that a foreign corporation doing business through public warehouses as the Complainant is doing it here, was not exempted from franchise and excise taxes by Ch. 106, Pub. Acts 1937, it follows that the Complainant is liable

under the "well settled" rule quoted and italicized above.

By the last two assignments of error, Complainant invokes the "interstate commerce" (Art. I, sec. 8, U. S. Constitution) and "due process" (14th Amendment, U. S. Constitution) clauses of the Federal Constitution, and section 8, Art. I, of the Constitution of Tennessee. Complainant insists that the contested assessment of the franchise and excise taxes is invalid: (a) Because it imposes an unlawful burden on interstate commerce, (b) Because it "has the effect of allocating to Tennessee for taxation an unreasonably and disproportionately large portion of Complainant's income and capital." As to (a), this same proposition has been presented on similar assessments in many of our reported cases: for example, *American Steel & Wire Co.*, *supra; General Oil Co.* v. *Crain, supra; Nashville C. & St. L. Ry.* v. *Browning*, 176 Tenn. 245, 140 S. W. (2d) 71; *Memphis Nat. Gas Co.* v. *Beeler*, 315 U. S. 649, 62 S. Ct. 857, 86 L. Ed. 1090. Decisions of this Court in these cases have been against Complainant's contention, and as indicated by the citations, our decisions have been reviewed and affirmed by the Supreme Court of the United States.

Considering a tax assessment formula similar to the one before us, the Supreme Court of the United States said in 1946:

"A state's tax law is not to be nullified merely because the result is achieved through a formula which includes consideration of interstate and out-of-state transactions in their relation to the intrastate privilege." *International Harvester Co.* v. *Evatt*, 329 U. S. 416, 67 S. Ct. 444, 447, 91 L. Ed. 390, 395.

. However, as we view the undisputed facts in this record, no question of burdening interstate commerce is presented. The evidence is that all of the tobacco products here involved came to rest in Tennessee, the interstate movement is arrested, and the Complainant, in its own name, carries insurance on the merchandise in warehouses and pays *ad valorem* taxes on this merchandise to local taxing authorities. At the time of the incidence of the franchise and excise taxes, the goods are not in interstate commerce and, therefore, the tax is not a burden upon such commerce. The storage in warehouses is not an "interruption" but a "cessation" of the shipment, and the goods are held in warehouses in Complainant's name, not designated or separated for sale to any particular customer or customers, but subject to sale by Complainant to any of its customers after the storage has been made. *Champlain Realty Co.* v. *Brattleboro*, 260 U. S. 366, 43 S. Ct. 146, 67 L. Ed. 309, 25 A. L. R. 1195; *Independent Warehouses, Inc.*, v. *Scheele*, 331 U. S. 70, 67 S. Ct. 1062, 91 L. Ed. 1346; *General Oil Co.* v. *Crain*, *supra.*

We consider next the second constitutional question and the assertion that the assessment is confiscatory because a "disproportionately large" part of the corporate assets is allocated to Tennessee for the assessment.

In determining the part of the capital, surplus and undivided profits of the corporation to be allocated to Tennessee for the purpose of assessing the franchise tax, the legislative formula (Code, sec. 1248.145) is simply a reasonable and convenient method for fixing a fair tax. We doubt that any human agency could determine with accuracy what part or how much of a foreign corporation's intangible assets have been employed in doing business in Tennessee.

Since mathematical precision is impossible, and yet the intangible asset is taxable, Courts have unanimously approved the method of assessing by reasonable legislative formula. *International Harvester Co.* v. *Evatt, supra; Butler Bros.* v. *McColgan,* 315 U. S. 501, 62 S. Ct. 701, 86 L. Ed. 991; *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, 41 S. Ct. 45, 65 L. Ed. 165; *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321, 38 S. Ct. 499, 62 L. Ed. 1135; *General Shoe Corp.* v. *Stokes,* 181 Tenn., 286, 181 S. W. (2d) 146.

It is only when application of the formula results in allocating to the taxing state an amount of earnings or net worth palpably disproportionate to the business done or property owned in the taxing state that the "due process clause" of the Federal Constitution may be successfully invoked by the corporation taxed. *International Harvester Co.* v. *Evatt, supra; Hans Rees' Sons* v. *North Carolina,* 283 U. S. 123, 51 S. Ct. 385, 75 L. Ed. 879; *Looney* v. *Crane & Co.,* 245 U. S. 38 S. Ct. 85, 62 L. Ed. 230. The assets (profits or property) taxed must be "reasonably attributable" to the taxing state. *Hans Rees' Sons* v. *North Carolina,* 283 U. S. 123, 51 S. Ct. 385, 75 L. Ed. 879, 905. And the assessment must not be "inherently arbitrary or a mere effort to reach profits earned elsewhere under the guise of legitimate taxation." *Bass, Ratcliff & Greton* v. *State Tax Commission,* 266 U. S. 271, 45 S. Ct. 82, 84, 69 L. Ed. 282, 287.

Now applying these tests to determine whether the contested assessments are "palpably disproportionate," "inherently arbitrary" or an attempt to confiscate under the guise of legitimate taxation, we will consider the largest annual tax assessed and contested, which is that for 1945. By its return for that year, the corporation

shows total capital, surplus and undivided profits of $221,558,817. Sales everywhere during the year, $436,-311,355; sales in Tennessee $9,093,318. The ratio for fixing the franchise tax base (Code, sec. 1248.145) was 1.1749% by the use of which $2,603,095 of the corporate capital, surplus and undivided profits were allocated to Tennessee, for the franchise tax base, while the ratio (Code sec. 1316) for fixing excise tax base was only 1.47798%. In other words, there was allocated to Tennessee for the purpose of fixing the bases of the franchise and exise taxes about 1½ per cent of the assets of the corporation, and on these bases privilege taxes were exacted for making sales in Tennessee in the amount of $9,093,318 when total sales for the year amounted to $436,311,385. It also appears that additional Tennessee business was done by Complainant by purchasing 32,639,-725 lbs. of tobacco on various open markets throughout the State.

We do not find that the amounts allocated for taxation by the State were either arbitrary, confiscatory or disproportionate in comparison with the total volume of business done. The meaning of the words "disproportionate" and "arbitrary" in this connection may be understood from the decisions of the U. S. Supreme Court in *Hans Rees' Sons* v. *North Carolina, supra,* and *Bass, Ratcliff & Gretton* v. *State Tax Commission, supra.*

Because, by Chapters 42 and 43 of the Public Acts of 1947, the Legislature amended the excise and franchise tax laws to include specifically the business done through public warehouse, it is argued that prior to the amendment such business was not included in the tax levy. The argument has no weight in view of the decision of this Court in *Sealed Power Corp.* v. *Stokes, supra.*

From various opinions emanating from the office of the Attorney General prior to the commencement of this litigation, some of which were signed by one of the Attorneys for the Complainant, it is clear that the State has never been in doubt that business done through public or private warehouses was taxable.

Under the foregoing authorities and for the reasons stated, Complainant's assignments of error are overruled.

We next consider the State's assignment of error that the Chancellor erred in applying the 6-year Statute of Limitations (Code sec. 1494; *Memphis Natural Gas Co.* v. *Pope,* 178 Tenn. 580, 161 S. W. (2d) 211), and holding that back assessment of franchise and excise taxes for the first of the five years was barred by the statute. The back assessment for the tax was made November 18, 1946. Since the statutory tax year and the corporation fiscal year are the same, the return by the corporation for the year preceding July 1, 1941 (Code sec. 1248.146 and Code sec. 1322), could have been filed only after July 1, 1941. The information necessary to complete the return was available only after that date, therefore, to require the State to collect the tax before statistics necessary for assessment were available and before the sales upon which the tax was based, had been made, would be to require the impossible. Further, the two Acts fix the due date for the payment of the tax on July 1st, after the fiscal or business year on which the tax is levied. For the excise tax, Code, sec. 1318, provides, "The tax imposed shall be due and payable on July 1st of each *succeeding* year." Succeeding what? Obviously, "succeeding" or "following" or "after" the year's sales on which the tax is based, have been completed. The lan-

·guage of the corresponding provision in the franchise tax law, which may be considered *in pari materia*, since the identical information is necessary for both returns, fortifies the foregoing construction:

"The tax herein levied shall be paid to the commissioner of finance and taxation on or before July 1st of each year and shall be paid at the time the *sworn report is filed*." Williams' Code, sec. 1248.146. ·

Clearly, the amount of the tax can only be fixed after consideration of the sworn reports, and the latter can only be completed after the sales are made and the business is done.

■ A Statute of Limitation runs only after the accrual of a complete right of action. *Columbian Mut. Life Ins. Co.* v. *Martin,* 175 Tenn. 517, 136 S. W. (2d) 52; 34 Am. Jur., 91. Code sec. 1494 provides that the Statute of Limitation commences to run from January 1st, of the year in which the tax accrues.

". . . the courts uniformly hold that a right of action generally accrues when the complainant can bring suit to recover *a sum of money alleged to be due and unpaid*." *Henwood* v. *McCallum & Robinson, Inc.,* 179 Tenn. 531, 535, 167 S. W. (2d) 981, 982.

■ While laws imposing a tax are strictly construed in favor of the taxpayer, laws imposing a Statute of Limitation on the collection of the tax, being in derogation of the rights of the sovereign, are liberally construed in favor of the State's right to collect the tax. *Hake* v. *Warren,* 184 Tenn. 372, 199 S. W. (2d) 102; *Anderson* v. *Security Mills,* 175 Tenn. 197, 133 S. W. (2d) 478; *Knoxville* v. *Gervin,* 169 Tenn. 532, 89 S. W. (2d) 348, 103, A. L. R. 877.

█ On January 1, 1941, the Six-year Statute of Limitations, Code sec. 1494, commenced to run against the taxes due July 1, 1941, and the back assessment of those taxes on November 18, 1946, was not barred by the statute.

For the reasons stated, the assignments of error of the Complainant are overruled, and the assignment of error of the State is sustained. The decree of the Chancellor as modified is affirmed. The Complainant will pay the costs.

All concur.