AMERICAN BEMBERG CORPORATION *v.* CARSON.

NORTH AMERICAN RAYON CORPORATION *v.* CARSON.

(*Nashville*, December Term, 1948.)

Opinion filed March 11, 1949.

Cox, Taylor, Epps & Miller, of Johnson City, and George F. Dugger, of Elizabethton, for appellants.

Roy H. Beeler, Atty. Gen., William F. Barry, Sol. Gen., and Harry Phillips, Asst. Atty. Gen., for appellee.

GAILOR, Justice.

This appeal presents two consolidated causes. Bills were filed in the Chancery Court of Davidson County by the American Bemberg Corporation and by the North American Rayon Corporation, against the Commissioner of Finance and Taxation, to recover certain franchise and excise taxes paid under protest for the year ending July 1, 1946, and to assail the method of assessment by which the taxes had been levied and collected. The Commissioner filed an answer, and after voluminous proof was taken, the Chancellor heard the two causes together, filed a careful written opinion, denied the relief sought and dismissed the bills. The complainants have perfected appeals in a single record, and it is agreed that identical questions are presented in the two cases. Numerous assignments of error are made to support the appeal, and the case being here on broad appeal, we

will consider such assignments as we consider material to the disposition of the case in the course of the opinion.

Under the excise and franchise tax laws, both these corporations are assessable as manufacturing corporations. Their manufacturing operation is entirely in Tennessee and almost all their tangible properties are in Tennessee. Both maintain offices in New York, and from the New York offices almost all sales are made to customers, the goods being delivered from stocks in Tennessee.

A tabular analysis of the operations of the two corporations for the tax period is incorporated in the Chancellor's opinion. Some of these figures are assailed in one of the assignments of error, and we have made such changes as the record justifies in making the following copy:

" 'Bemberg

|  | Tennessee | New York and Elsewhere |
|---|---|---|
| " 'Manufacturing | 100% | 0 |
| Employees | 2,121 | 30 |
| Real Estate | $1,543,239.68 | 0 |
| Tangible Personal Property | 2,632,526.90 | 3,599.30 |
| Payroll | 3,965,000.00 | 190,000.00 |
| Sales | 528,154.51 | 10,984,442.14 |
| Cash Collections | 200,000.00 | 13,350,000.00 |
| Cash Disbursements | 4,800,000.00 | 8,500,000.00 |
| " 'North American | | |
| " 'Manufacturing | 100% | 0 |
| Employees | 3,775 | 37 |
| Real Estate | $2,613,882.38 | 0 |
| Tangible Personal Property | 6,461,639.84 | 4,001.09 |
| Payroll | 7,144,000.00 | 227,000.00 |
| Sales | 239,800.30 | 19,403,359.46 |
| Cash Collections | 400,000.00 | 22,860,000.00 |
| Cash Disbursements | 8,620,000.00 | 13,225,000.00' " |

For the questioned tax year, the statutory formula, Williams' Code, sec. 1316, for allocation of the excise tax was applied and resulted in a factor of 68.1665% of Bemberg's net earnings, and 67.0573% of North America's net earnings for the year ending July 1, 1946.

Application of the statutory formula for the franchise tax, Williams' Code, sec. 1248.145, resulted in allocation to Tennessee for the franchise tax for the same period, of capital stock, surplus and undivided profits of Bemberg 99.9559% and of North American 99.9756%.

■ The first attack is upon the validity and constitutionality of these statutory formulas, and it is insisted that the Chancellor erroneously held that the decision of General Shoe Corporation v. Stokes, 181 Tenn. 286, 290, 181 S. W. (2d) 146, established the validity of these formulas. It is insisted that that decision furnishes no such authority since it was agreed in that case that these formulas were valid. If the Chancellor cited the wrong case, it is immaterial. The validity and constitutionality of such statutory formulas for the calculation of privilege taxes has long been recognized both by this Court and the Supreme Court of the United States, so that the question is no longer open. *Reynolds Tobacco Co.* v. *Carson,* 187 Tenn. 157, 213 S. W. (2d) 45, 49; *Corn* v. *Fort,* 170 Tenn. 377, 95 S. W. (2d) 620, 106 A. L. R. 647; *Bank of Commerce* v. *Senter,* 149 Tenn. 569, 260 S. W. 144; *International Harvester Co.* v. *Evatt,* 1947, 329 U. S. 416, 67 S. Ct. 444, 91 L. Ed. 390; *Butler Bros.* v. *McColgan,* 1942, 315 U. S. 501, 62 S. Ct. 701, 86 L. Ed. 991; *Underwood Typewriter Co.* v. *Chamberlain,* 1920, 254 U. S. 113, 41 S. Ct. 45, 65 L. Ed. 165; *United States Glue Co.* v. *Oak Creek,* 1920, 247 U. S. 321, 38 S. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748.

On account of the results reached by application of the statutory formulas, complainants insist that defendant Commissioner should have exercised the following power vested in him in identical language by the two Acts:

"If, because of peculiar or unusual circumstances inherent in a particular case, the application of the above formulas would work a hardship or injustice, the commissioner, upon application of the taxpayers and upon such showing, is authorized, with the approval of the Attorney-General, to adopt such other method of apportionment as would be fair and just under the facts of the case." Williams' Code, section 1248.145 and Code, section 1316.

We think it clear beyond argument that this confers a discretionary power upon the Commissioner. He is given authority, with the approval of the Attorney General, to determine what peculiar or unusual circumstances justify a method of apportionment other than that provided by the statutory formulas and he, under the facts of the particular case, is to determine what allocation would be fair and just. The Chancellor correctly so held, and the assignments of error attacking that holding are overruled.

To support their argument, complainants show that in prior years the statutory formulas were not enforced against them, but a "hardship formula" was used to assess both excise and franchise taxes. Clearly, this liberality of former collecting agents was not binding on the State for subsequent tax years, *National Life & Accident Ins. Co.* v. *Dempster,* 168 Tenn. 446, 461 79 S. W. (2d) 564; *R. J. Reynolds Tobbacco Co., supra,* 187 Tenn. 157, 213 S. W. (2d) 49, and is effective as argument

only. In July 1946, complainants made returns for the preceding tax year and attached checks for taxes in an amount calculated on the "hardship formula" which has been theretofore acceptable. The Commissioner, with the approval of the Attorney General, refused to agree to the application of the "hardship formula" and insisted on the higher assessment by application of the statutory formulas in the regular way. Thereupon, Bemberg paid additional excise taxes in the sum of $1147.12, and additional franchise taxes in the sum of $3010.16, and North American paid additional excise taxes in the sum of $1068.49, and franchise taxes in the amount of $5543.83. These amounts were paid under protest and their recovery is sought by the bill.

The effect of the prayer of the bill and of the principal argument to support the appeal is not that the Court should compel the defendant Commissioner to exercise his discretionary power, but that it should compel the exercise of that discretionary power in a particular way,—by abandoning the statutory formulas and applying a "hardship formula." No authority is cited to support the Court's exercise of such a power, and we are confident that none can be found in view of the wealth of authority to the contrary. Though the relief sought is not in terms a writ of mandamus, the declaration sought would have the same effect, and cases on mandamus present identical legal principles. *State ex rel. v. Meador,* 153 Tenn. 634, 284 S. W. 890; *State ex rel. v. Clark,* 173 Tenn. 81, 114 S. W. (2d) 800 Cf. 55. C. J. S., Mandamus, sec. 182, p. 355, where numerous cases from other jurisdictions are collected to support the statement that "as a general rule mandamus will not lie to control a discretion vested in an officer or board with respect to the levy and assessment of taxes."

■ Since we hold that the discretion to apply the "hardship formula" was vested in the defendant Commissioner, subject to the approval of the Attorney General, the burden is on the complainants to introduce clear and cogent evidence that the discretion vested in the Commissioner has been abused. That burden is the heavier on the appellants in view of the Chancellor's adverse decree. As we view it, the degree of proof that would support our finding that the Commissioner had abused his discretion, would sustain the alternate proposition of complainants that the method adopted was unconstitutional as violating the due process and commerce clauses of the Federal Constitution, art. 1, sec. 8, cl. 3; Amend. 14. To show a violation of the 14th Amendment, complainants must show that application of the statutory formulas results in arbitrary and palpably disproportionate allocation to Tennessee of income actually earned in another State, or net worth actually employed outside the borders of Tennessee. *International Harvester Co.* v. *Evatt, supra; Hans Rees' Sons* v. *North Carolina,* 283 U. S. 123, 51 S. Ct. 385, 75 L. Ed. 879; *R. J. Reynolds Tobbacco Co.* v., *Carson, supra.*

" 'One who attacks a formula of apportionment carries a distinct burden of showing by "clear and cogent evidence" that it results in extraterritorial values being taxed. See *Norfolk & W. R. Co.* v. *(State of) North Carolina,* 297 U. S. 682, 688, 56 S. Ct. 625, 628, 80 L. Ed. 977.' *Butler Bros.* v. *McColgan, supra* (315 U. S. 501, 62 S. Ct. [701], 704, 86 L. Ed. 991)." *General Shoe Corp.* v. *Stokes et al.,* 181 Tenn. 286, 290, 181 S. W. (2d) 146, 147.

■ The mere fact that net earnings upon which a privilege tax is assessed, were derived from interstate

business done in Tennessee, does not impose an unlawful burden on interstate commerce. *Memphis Natural Gas Co.* v. *Beeler,* 1942, 315 U. S. 649, 62 S. Ct. 857, 86 L. Ed. 1090; *Butler Bros.* v. *McColgan,* 1942, 315 U. S. 501, 62 S. Ct. 701, 86 L. Ed. 991; *Ford Motor Co.* v. *Beauchamp,* 1940, 308 U. S. 331, 60 S. Ct. 273, 84 L. Ed. 304; *Bass, Ratcliff & Gretton* v. *State Tax Com.,* 1924, 266 U. S. 271, 45 S. Ct. 82, 69 L. Ed. 282; *General Shoe Corp.* v. *Stokes,* 181 Tenn. 286, 181 S. W. (2d) 146; *Memphis Natural Gas Co.* v. *McCanless,* 180 Tenn. 695, 177 S. W. (2d) 843.

''That a tax measured by net profits is valid, although these profits may have been derived in part, or indeed mainly from interstate commerce, is settled.'' *Underwood Typewriter Co.* v. *Chamberlain,* 1920, 254 U. S. 113, 41 S. Ct. 45, 46, 65 L. Ed. 165, 169; *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321, 38 S. Ct. 499, 62 L. Ed. 1135; *General Shoe Corp.* v. *Stokes, supra.* . .

■ As applied to these complainants, Delaware corporations doing their entire manufacturing business in Tennessee, the excise and franchise taxes exacted for the privilege of exercising their corporate franchises and doing business in Tennessee, represent a single coordinate scheme of taxation and are to be considered together in determing their burden on complainants and the effect on their constitutional rights. Assignments of error assailing this clear proposition of law are overruled. *Bank of Commerce & Tr. Co.* v. *Senter,* 149 Tenn. 569, 260 S. W. 144; *Corn* v. *Fort,* 170 Tenn. 377, 95 S. W. (2d) 620, 106 A. L. R. 647; *R. J. Reynolds Tobacco Co.* v. *Carson, supra.* Thus considering the application of the two taxes as a coordinated and connected system, it appears that the application of the

excise tax statutory formula resulted in the allocation to Tennessee of 68.1665% of Bemberg's net earnings in 1945. This left 31.8335% or $301,537.00 of Bemberg's net earnings that were not taxed by Tennessee or any other state. Of the net earnings of North American 32.9427% were not taxed in Tennessee or elsewhere, with the result that $367,990.00 of the net earnings of North American were not taxed at all. As heretofore stated, the franchise tax factor for Bemberg was 99.9559%, and for North American 99.9756%.

■ The mere fact that application of the statutory formula for the franchise tax gives a factor of more than 99% does not *per se* invalidate the use of the formula, nor show that Tennessee has taxed extraterritorial values. Other facts are to be considered. That the excise and franchise taxes taken together are a coordinate scheme or system of taxing these foreign manufacturing corporations. That as the excise tax is applied to them they escape taxation by any state on approximately 35% of net earnings. That the franchise tax factor of 99% plus, is to be considered in the light of the excise tax factor of 67%, so far as the fair and just apportionment of taxes to the two corporations is concerned. As the State insists, Underwood Typewriter Co. v. Chamberlain, supra, is controlling on this aspect of the case. There, a statute of Connecticut imposed upon foreign corporations doing business partly within and partly without the State an annual tax of 2% upon the net income earned during the preceding year on business carried on within the State, ascertained by taking such proportion of the whole net income on which the corporation was required to pay a tax to the United States as the value of its real and tangible personal property in the State

bore to the value of all its real and tangible personal property.

Since 47% of the real and tangible personal property was located in Connecticut, the corporation's assessment was made upon the basis of 47% of its entire net income. All the manufacturing was done in Connecticut but approximately 99% of the net profits arose from sales in other states. It was contended that the tax was an unconstitutional burden upon interstate commerce and that it violated the Fourteenth Amendment in that it imposed a tax on income arising from business conducted without the State; and that, while only 1% of the income was actually received in Connecticut, 47% of the net income was sought to be taxed. It was also established that the main office of the company was in New York City and that branch offices were conducted in other States for the sale, lease and repair of typewriting machines and the sale of supplies; and that there was only one branch office in the State of Connecticut.

The United States Supreme Court, in a unanimous opinion by Justice Brandeis, held that the evidence did not establish that the method of allocation was arbitrary, and that the mere showing that 99% of the sales were made in other states was not *per se* objectionable.

"In support of its objection that business outside the state is taxed, plaintiff rests solely upon the showing that of its net profits $1,293,643.95 was received in other states and $42,942.18 in Connecticut, while under the method of apportionment of net income required by the statute 47 per cent of its net income is attributable to operations in Connecticut. But this showing wholly fails to sustain the objection. The profits of the corporation were largely earned by a series of transactions beginning

with the manufacture in Connecticut and ending with sale in other states. In this it was typical of a large part of the manufacturing business conducted in the state. The Legislature, in attempting to put upon this business its fair share of the burden of taxation, was faced with the impossibility of allocating specifically the profits earned by the processes conducted within its borders. It, therefore, adopted a method of apportionment which, for all that appears in this record, reached, and was meant to reach, only the profits earned within the state. 'The plaintiff's argument on this branch of the case,' as stated by the Supreme Court of Errors, 'carries the burden of showing that 47 per cent of its net income is not reasonably attributable, for purposes of taxation, to the manufacture of products from the sale of which 80 per cent of its gross earnings was derived after paying manufacturing costs.' [94 Conn. 47, 108 A. 159.] The corporation has not even attempted to show this; and for aught that appears the percentage of net profits earned in Connecticut may have been much larger than 47 per cent. There is, consequently, nothing in this record to show that the method of apportionment adopted by the state was inherently arbitrary, or that its application to this corporation produced an unreasonable result." 254 U. S. 113, 41 S. Ct. 47, 65 L. Ed. 165, 169-170.

We copy the following comparison of the Underwood case with the situation of Bemberg and North American from the excellent brief filed for the State:

"(1) All of the manufacturing is done in Tennessee, just as all the manufacturing of the Underwood Typewriter Company was done in Connecticut.

"(2) The Underwood Typewriter Company sold 99% of its products to customers in other states. Bemberg

sells 95.4124% and North American 98.7792% of products manufactured in Tennessee to customers in other states.

"(3) Only 1% of the income of Underwood Typewriter Company was received in Connecticut. In 1945, Bemberg's cash collections were $200,000.00 in Tennessee as compared to $13,350,000.00 in New York. North American's cash collections in Tennessee were $400,000.00 and $22,460,000.00 in New York.

"(4) The main office of the Underwood Typewriter company was located in New York. Bemberg and North American maintained only small offices in New York, with 30 and 37 employees respectively, carrying on in Tennessee such essential corporate functions as accounting, purchasing and personnel.

"(5) Only 47% of the real and tangible personal property of the Underwood Typewriter Company was owned in Connecticut. More than 99% of Appellants' real and tangible property is owned in Tennessee."

■ Complainants' argument that if New York imposed the same tax there would be double taxation, is not persuasive. We must presume that if such a situation arose the taxing authorities both in Tennessee and New York would apply the taxes in a valid and constitutional manner.

"We have no occasion to consider whether the rule prescribed, if applied under different conditions, might be obnoxious to the Constitution." *Underwood Typewriter Co. v. Chamberlain, supra,* 254 U. S. 113, 41 S. Ct. 45, 47, 65 L. Ed. 165, 170, citing *Adams Exp. Co. v. Ohio State Auditor,* 17 S. Ct. 604, 166 U. S. 185, 222, 41 L. Ed. 965, 978.

Here, there is no showing that Tennessee has allocated to itself tax values beyond its territorial jurisdic-

tion. The truth of this is evidenced by the fact that the corporations pay only nominal taxes to Delaware and New York. The argument that since the paper-work on sales is done in the New York office, that therefore, the intangible tax value attributable to sales is in New York, is refuted by the proof that the corporations do not report 100% of their sales to New York as New York sales. On the contrary, Bemberg reported to New York only .2538% of its sales as New York sales in 1945, and North American only .0584% of its sales as New York sales in 1945. And thus Bemberg paid to New York on only $28,722.44 of $11,353,737.56 gross sales, and North American on only $11,252.01 of gross sales of $19,258,668.35.

"The bare fact of sale produces no income. It is merely the act by which the income is captured; the capital, the organization, or efforts which produce the sale, are the things to be considered in ascertaining the amount of income to be credited to the sale. Certainly, in a unitary business, we must look further back than to the sale itself or the activities which actually produce it. The tangible property element of capital outlay is cared for in the tangible property ratio set up by the statute. If there is anything beyond that of sufficient magnitude to affect the constitutionality of the application of this rule, it must be shown in the evidence; the burden resting upon the taxpayer to do so." *Maxwell* v. *Kent-Coffey Mfg. Co.*, 204 N. C. 365, 168 S. E. 397, 400, 90 A. L. R. 476, affirmed 291 U. S. 642, 54 S. Ct. 437, 78 L. Ed. 1040.

The same principle is adopted in *General Shoe Corp.* v. *Stokes,* 181 Tenn. 286, 181 S. W. (2d) 146, though it was there applied not to sales but to the purchase of raw materials.

The Maxwell case was decided by the Supreme Court of North Carolina after the decision of the Supreme Court of the United States in the Hans Rees case, supra. The Kent-Coffey Mfg. Company was a Delaware corporation conducting a manufacturing business in North Carolina. Percentage of its net income attributable to North Carolina for taxation was ascertained by taking the ratio of the cash value of its real estate and tangible personal property in the State to the fair cash value of its entire real estate and tangible personal property everywhere, no deductions being allowed on account of encumbrances. Since 99.2% of the real estate and tangible personal property was located in the State of North Carolina, the taxpayer was required to pay taxes measured by 99.2% of its entire net income. In contesting the tax it was established that only .002% of the total sales of the corporation were made within the State of North Carolina, and that 99.8% of the total sales were made to customers outside the State. It resulted that a corporation selling only .002% of its products in the State, paid a new income tax upon the basis of 99.2% of its net income. Nevertheless, it was held that the evidence was insufficient to establish that the method of allocation was inherently arbitrary.

The excise tax is determined by taking the average of three ratios, Code, sec. 1316:

(a) Ratio of Tennessee property to all property of the corporation.

(b) Ratio of cost, etc., of manufacturing in Tennessee to total manufacturing cost.

(c) Ratio of gross sales to Tennessee customers to total gross sales.

The franchise tax is determined by taking the average of the first two ratios, Code, sec. 1248.145, omitting the third, that of the proportion of gross sales to customers within Tennessee to the total gross sales from all sources. In the case of complainants, if the third ratio be interpolated in determining their franchise taxes, the tax factor would be reduced from 99 plus per cent to 65 plus per cent. Because the Commissioner, in the exercise of his discretion, refused to interpolate this third ratio, that of sales, and so apply a "hardship formula," complainants insist that this Court must interpolate this third ratio to save the Act from unconstitutionality in its application to complainants. Such an amendment of this Franchise Tax Act is clearly a legislative, not a judicial, function. In at least two cases, the Supreme Court of the United States has held that statutes of Connecticut and North Carolina, levying corporate taxes, are valid though they do not contain a ratio based on sales. *Underwood Typewriter Co.* v. *Chamberlain, supra,* and *Maxwell* v. *Kent-Coffey Mfg. Co., supra.* We agree with the contention of the State that the Tennessee formulas are more equitable than those considered in the *Underwood Case* and the *Maxwell Case.* Both franchise and excise tax formulas in Tennessee contain factors reflecting manufacturing costs as well as values of real and tangible property, and the excise tax excludes from its operation all sales made to customers out of Tennessee.

It is forcibly argued in the supplemental brief filed for the complainants since the argument, that in assessing the franchise tax, personal property, accounts receivable, stocks, bonds and mortgages, of Bemberg in the sum of $3,853,578.00 and of North American $7,-

856,934.00 are physically in New York and that, therefore, the franchise taxes as imposed on factors of 99% plus reach extra-territorial values. As has been frequently held by this Court, *Reynolds* v. *Carson, supra*, and cases cited, the basis of excise tax is net earnings, and of the franchise tax, net worth, *Corn* v. *Fort*, 170 Tenn. 377, 392, 95 S. W. (2d) 620, 106 A. L. R. 647, both taxes being exacted of corporations for the privilege of doing business in Tennessee.

The argument that the situs of the personal property of the two corporations is in New York would be more effective, if we were considering an *ad valorem* tax, or if we were considering a privilege tax based on tangible property. *Texas Company* v. *McCanless*, 177 Tenn. 238, 148 S. W. (2d) 360. The Chancellor found (State's brief, p. 23), "As has heretofore been shown, all of the real estate and practically all of the tangible personal property is in Tennessee. The capital stock, surplus and undivided profits used as a measure of Tennessee franchise taxes were not taxed by New York or Delaware. Only nominal taxes were paid in New York." This finding was supported by the stipulation of fact where it appears that Bemberg returned as its total of New York property $3,866.97 for 1945, and North American for the same period, its total personal property in New York $4,066.77.

But aside from the factual controversy over the physical location of the accounts receivable, stocks, bonds and mortgages, etc., the physical location of the papers is not controlling on the assessment of the franchise or excise taxes as we undertook to point out in *Reynolds Tobacco Co.* v. *Carson, supra*. The net worth of a corporation determines in the usual case, its commercial

power to do business. Obviously, the fact that a part of net worth, evidenced by certain commercial documents, is physically located in New York, does not prevent the influence of the resulting commercial power from having its effect on the business of the corporation in Tennessee. As we stated, these two corporations in former years were given the advantage of a "hardship formula" which divided the operations of the two corporations into two phases, (1) manufacturing, and (2) selling. Our criticism of this is that the operation of both corporations is unitary from the purchase of the raw materials to the sale of the finished product. There is no separation and no gap in the operation of either.

"Conceding that a unitary business may produce an income which must be allocated to two or more states in which its activities are carried on, such a business may not be split up arbitrarily and conventionally in applying the tax laws. It would seem to be necessary that there should be some logical reference to the production of income; the distinction should be founded on a corresponding difference in apportionment of productive capital, investment, or employment, within the unitary business." *State ex rel. Maxwell* v. *Kent-Coffey Mfg. Co., supra.*

When the taxpayer in the *Kent-Coffey Case, supra,* lost the case in the State Court, it was taken to the U. S. Supreme Court, the taxpayer insisting that the case was controlled by *Hans Rees* v. *North Carolina,* 283 U. S. 123, 51 S. Ct. 385, 75 L. Ed. 905. In affirming the State Court, the U. S. Supreme Court, 291 U. S. 642, 54 S. Ct. 437, 78 L. Ed. 1040, specifically held that the case was controlled by *Underwood Typewriter Co.* v. *Chamberlain* and not by *Hans Rees* v. *North Carolina, supra.* So we

hold, despite strenuous argument to the contrary, that the present appeal is controlled by the *Underwood Typewriter Co.* case, and not the *Hans Rees* case.

To support our statement, a tax expert and witness for complainants said:

"Q. Then it is correct to say that the American Bemberg Corporation is engaged in the single unitary business of manufacturing and selling rayon? A. That is right.

"Q. And the same thing is true of the North American Rayon Corporation. It is engaged in the single unitary business of manufacturing and selling rayon? A. That is right.

. . . . . .

"Q. Now as to all of the intangible assets which you have listed under Section II of your bills in these two suits and would allocate to New York under your theory, is it not correct that these items of cash, your investments in bonds, your accounts receivable, these other intangibles are a part of the working capital of your corporation. which support your financial structure both in Tennessee and New York? A. Yes they are."

It is well settled that Tennessee may tax intangibles located outside of Tennessee, if such intangibles are a part of the working capital of a unitary corporation. In *Commonwealth* v. *Ford Motor Co.*, 1944, 350 Pa. 236, 38 A. (2d) 329, dismissed 324 U. S. 827, 65 S. Ct. 857, 89 L. Ed. 1394, it was held that such intangibles as capital invested by the Ford Motor Company in subsidiary corporations operating ocean vessels, mines, quarries, and timber tracts, in other states and foreign countries, were properly included in the assessment of a corporate franchise tax by Pennsylvania:

"So far as due process is concerned the only question is whether the tax in practical operation has relation to opportunities, benefits, or protection conferred or afforded by the taxing State." *Ott* v. *Mississippi Valley Barge Line Co.*, 336 U. S. 169, 69 S. Ct. 432, 434, 93 L. Ed.; *Pullman Car Co.* v. *Pennsylvania*, 141 U. S. 18, 11 S. Ct. 876, 35 L. Ed. 613; *Wisconsin* v. *J. C. Penney Co.*, 311 U. S. 435, 61 S. Ct. 246, 85 L. Ed. 267..

Finally, we find the complainants have failed to prove by "clear and cogent evidence" either that the refusal of the Commissioner to apply a "hardship formula" was an abuse of his discretion or that the statutory formulas as applied to Bemberg and North American reached values beyond the taxing power of Tennessee.

Under the authorities cited and considered, the decree of the Chancellor is affirmed at complainants' cost.

All concur.